# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERTA MARINA PEREZ HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT,<br><br>Respondent. | Case No. 1:25-cv-01388-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENT TO RELEASE PETITIONER |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Petitioner be released from custody.

## I.

## BACKGROUND

Petitioner is a citizen and national of Guatemala. (ECF No. 1 at 16, 17.[1]) Petitioner claims that she has lived in the United States for over twenty years, has U.S. citizen children, and has no criminal record other than a single arrest for driving without a license and insurance. (ECF No. 12 at 3.)

On June 27, 2025, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE"). (ECF No. 1 at 17.) It appears that Petitioner is being charged as "an alien present in the United States without being admitted or paroled, or who arrived in the United

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

States at any time or place other than as designated by the Attorney General" under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (ECF No. 1 at 17.)

On July 14, 2025, an immigration judge ("IJ") ordered that Petitioner be released from custody under a bond of $2,000 and alternatives to detention at the discretion of the Department of Homeland Security ("DHS"). (ECF No. 1 at 13.) Petitioner alleges that DHS first filed an EOIR-43 to "get an automatic stay of the bond order" and then DHS filed an appeal of the bond order to the Board of Immigration Appeals ("BIA"), "triggering yet another stay." (ECF No. 1 at 2.) On September 23, 2025, the BIA issued an order, which stated:

> The Department of Homeland Security has appealed an Immigration Judge's July 14, 2025, bond order. The record, however, contains only a form order decision of the Immigration Judge. To conduct a meaningful review of that decision, the Board requires the form order be accompanied by a memorandum indicating the reasons for the Immigration Judge's determination. *See Matter of Daryoush,* 18 I&N Dec. 352,353 (BIA 1982). We must therefore return the record to the Immigration Court for further action. Upon receipt of the record, the Immigration Judge should prepare a written memorandum in support of the decision. The Immigration Judge should then certify the record back to the Board.

(ECF No. 1 at 11.)

On October 9, 2025, a different IJ denied Petitioner's request for a change in custody status due to lack of jurisdiction, stating:

> The undisputed facts in this case reflect that the [petitioner] entered the United States without inspection on or about June 2003. Subsequent to the issuance of the Court's bond decision, the Board held that based on the language of section 235(b)(2)(A) of the Immigration and Nationality Act, Immigration Judges lack authority to hear bond requests or to grant bond to aliens like the [petitioner] who are present in the United States without admission. Matter of Yajure Hurtado, 29 I&N Dec. 216, 220-29 (BIA 2025). Based on the [petitioner]'s presence in the United States without admission and the Board's intervening precedent in Yajure Hurtado, the Court lacked the authority to conduct the Bond hearing.
>
> The Court acknowledges that a prior Immigration Judge granted bond, however, since the Court lacked jurisdiction to grant bond, that bond order is rescinded. The [petitioner] points to no evidence to show that she has been admitted in any lawful status since her unlawful entry without inspection.

> The Courts [sic] prior order, dated 07/14/2025, is rescinded and this order is substituted in its place.
>
> Motion for Bond is DENIED.

(ECF No. 1 at 9–10.)

On October 17, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO") in this Court. (ECF Nos. 1, 2.) On October 20, 2025, the Court denied the motion for TRO. (ECF No. 4.) On November 19, 2025, Respondent filed an answer. (ECF No. 10.) On December 5, 2025, Petitioner filed a reply. (ECF No. 12.) That same day, Petitioner also filed a motion for preliminary injunction. (ECF No. 11.)

## II.

## DISCUSSION

In the petition, Petitioner asserts the following claims for relief: (1) Petitioner is not subject to mandatory detention because she entered the United States without inspection over twenty years ago and was not apprehended upon entry, and thus, cannot be considered to be "seeking admission"; and (2) the automatic stay of Petitioner's release on bond under 8 C.F.R. § 1003.19(i)(2) and the actions of a different IJ when the case was sent back to the immigration court violate Petitioner's right to substantive and procedural due process under the Fifth Amendment. (ECF No. 1 at 6.)

**A. Automatic Stay**

In Ground Two, Petitioner asserts that the automatic stay of her release on bond under 8 C.F.R. § 1003.19(i)(2) violates her right to substantive and procedural due process under the Fifth Amendment. (ECF No. 1 at 6.) The automatic stay regulation provides:

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.

8 C.F.R. § 1003.19(i)(2).

3

1     "Courts to address this issue have begun by noting that, for due process purposes,
2 invoking the automatic stay 'is a separate act of detention' from the initial act of detaining a
3 noncitizen suspected to be in the country illegally." <u>Otilio B.F. v. Andrews</u>, No. 1:25-cv-01398-
4 KES-EPG (HC), --- F. Supp. 3d ----, 2025 WL 3152480, at *9 (E.D. Cal. Nov. 11, 2025) (citing
5 <u>Silva v. Larose</u>, No. 25-cv-2329-JES-KSC, 2025 WL 2770639, at *3 (S.D. Cal. Sept. 29, 2025)).
6 "Both the initial act and subsequent act 'require valid authority and due process.'" <u>Otilio B.F.</u>,
7 2025 WL 3152480, at *9 (quoting <u>Herrera v. Knight</u>, No. 2:25-cv-01366-RFB-DJA, 2025 WL
8 2581792, at *9 (D. Nev. Sept. 5, 2025)).
9     In cases addressing this issue, the "initial act of detention was authorized by 8 U.S.C.
10 § 1226(a). But § 1226(a) detention was no longer authorized once the immigration judge granted
11 petitioner release on bond. The government therefore turned to 8 C.F.R. § 1003.19(i)(2) to detain
12 petitioner pending the government's appeal to the BIA." <u>Otilio B.F.</u>, 2025 WL 3152480, at *9.
13 Here, however, there is an additional complication because the record was returned to the
14 immigration court, where a different IJ rescinded the July 14, 2025 bond order in light of <u>Matter</u>
15 <u>of Yajure Hurtado</u>, 29 I & N Dec. 216 (BIA 2025). "Regardless of the status of the automatic
16 stay as to Petitioner . . . , however, Respondents make clear they continue to detain Petitioner . . .
17 based on their reading of § 1225(b)(2), and the Petition challenges h[er] detention on that
18 statutory basis. The Court thus turns to the statutory basis of [Petitioner]'s detention." <u>Escobar</u>
19 <u>Salgado v. Mattos</u>, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *10 (D. Nev. Nov. 17,
20 2025).[2]

21     **B. Statutory Basis of Petitioner's Detention**

22     Congress has enacted a complex statutory scheme governing the detention of noncitizens
23 during removal proceedings and following the issuance of a final order of removal. "Where an

---

[2] Respondent does not address the automatic stay issue at all and does not argue that Petitioner is detained pursuant to the automatic stay. Nonetheless, to the extent Respondent continues to detain Petitioner pursuant to the automatic stay, the undersigned recommends finding Petitioner's detention on that basis unconstitutional for the reasons set forth in <u>Otilio B.F.</u>, 2025 WL 3152480, at *9–11. <u>See</u> <u>M.P.L. v.</u> <u>Arteta</u>, No. 25-CV-5307 (VSB), 2025 WL 3288354, at *7 (S.D.N.Y. Nov. 25, 2025) (noting "near unanimity" of "[a]t least 50 district court decisions across the United States in the last 6 months alone" finding "that DHS's application of the automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2) violates a non-citizen's due process under the Fifth Amendment").

alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings": 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). Respondent asserts that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2). (ECF No. 10 at 1). In Ground One, Petitioner argues that "DHS's argument is directly foreclosed by Torres v. Barr, 976 F.3d 918, 927 (9th Cir. 2020) (en banc). Pursuant to that case law, I cannot be considered to be 'seeking admission.' So, I am not subject to mandatory detention." (ECF No. 1 at 6.) Petitioner contends that DHS's "detention authority lies under § 1226(a)." (ECF No. 12 at 2.)

8 U.S.C. § 1226(a) "is the default detention statute for noncitizens in removal proceedings." Avilez, 69 F.4th at 529. Detention under § 1226(a) "is discretionary" and "provides for release on bond or conditional parole." Id. The Supreme Court has described 8 U.S.C. § 1225 as follows:

> Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii). Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). See §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an

> asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

Jennings v. Rodriguez, 583 U.S. 281, 287–88 (2018).

> Until this year, DHS has applied section 1226(a) and its regime of discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Id.* As early as 1997, in the regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Immigration and Naturalization Service and the Executive Office for Immigration Review stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. at 10323. The government's briefing in this case acknowledges that its position historically was that section 1226(a) was "an available detention authority for aliens [present without being admitted or paroled] placed in full removal proceedings under § 1229a." (Dkt. No. 16 ("Opp.") at 12.)
>
> However, the government now disavows its prior position in light of subsequent "legal developments," including its 2025 designation "restor[ing] the scope of expedited removal to the fullest extent authorized by Congress," 90 Fed. Reg. at 8139. (Opp. at 12.) It contends that section 1225 is "the sole applicable detention authority for *all* applicants for admission" and asserts that all applicants for admission are "subject to the mandatory detention framework" of section 1225(b). (Opp. at 12, 14.)

Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *4 (N.D. Cal. Sept. 26, 2025) (footnote omitted).

6

1    Respondent argues that the Eastern District of California "has clearly established that
2 Petitioner, an applicant for admission (through surreptitious entry into the United States and civil
3 detention after first contact with DHS), is subject to mandatory detention pending removal,"
4 citing to Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *2 (E.D.
5 Cal. Nov. 17, 2025), and Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at
6 *2–5 (E.D. Cal. Nov. 17, 2025). (ECF No. 10 at 3.) However, as noted by Petitioner, (ECF No.
7 12 at 2), Respondent fails to mention other directly relevant rulings from this district, including
8 orders issued by the district judge assigned in this matter, coming to the opposite conclusion.
9    "The various legal arguments relied upon by Respondents to support this assertion [that
10 Petitioner's detention is mandatory under 1225(b) while her removal proceedings are pending]
11 have been rejected by this Court in other proceedings," even after Valencia and Alonzo. J.E.H.G.
12 v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *9 (E.D. Cal. Dec. 9, 2025).
13 See Valencia, 2025 WL 3205133, at *2 (noting that "[h]ere in the Eastern District of California,
14 recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as
15 applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also
16 reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate
17 framework for noncitizens already residing in the United States," and collecting cases).
18    The United States District Court for the Central District of California recently held that
19 DHS's new policy, which "requires ICE employees to consider anyone arrested in the United
20 States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C.
21 § 1225(b)(2)(A)," was unlawful. Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, --- F.
22 Supp. 3d ----, 2025 WL 3289861, at *1, 11 (C.D. Cal. Nov. 20, 2025). Bautista found that
23 "[w]hen considering the statutory definitions of the INA and the plain text of § 1225, it is
24 unambiguous that 'applicants for admission' do not include noncitizens already in the United
25 States like Petitioners—individuals that were not determined inadmissible by an 'examining
26 immigration officer.'" Id. at *9. Thus, "[i]ndividuals who are present in the United States and
27 have not been inspected and authorized by an immigration officers [sic] are merely part of the
28 broadly defined term '[noncitizen]': any person not a citizen or national of the United States,"

7

and "§ 1226(a) is the appropriate governing authority over [their] detention." Bautista, 2025 WL 3289861, at *9 (third alteration in original). Bautista also found that the government's "interpretation of § 1225 . . . effectively removes § 1226 from existence" and "cannot be harmonized with other portions of the INA." Id. at *10. Further, the Central District of California certified a nationwide class defined as follows: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, --- F.R.D. ----, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).[3]

This Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025).

Based on the foregoing, the undersigned recommends finding that the statutory basis of Petitioner's detention is 8 U.S.C. § 1226(a), which provides for release on bond or conditional parole, and thus, Petitioner is entitled to habeas relief on Ground One.[4]

**C. Appropriate Remedy**

"Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). "Moreover, in

---

[3] It appears that Petitioner may be part of the Bautista class.

[4] In light of this conclusion, the Court declines to address whether the actions of a different IJ when the case was sent back to the immigration court by the BIA violated Petitioner's right to substantive and procedural due process under the Fifth Amendment.

constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 (1973) (footnote omitted).

Here, the undersigned recommends that Petitioner be released from immigration detention, subject to the bond and other conditions imposed by the IJ in the July 14, 2025 order. See Escobar Salgado, 2025 WL 3205356, at *26 ("Petitioner Escobar-Salgado faces the specific harm of being deprived of his opportunity to be released on bond, pursuant to IJ Baker's order, for several months. The Court finds this harm is remedied by his immediate release, subject to the bond conditions imposed by IJ Baker."); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137, at *13 (D. Nev. Nov. 24, 2025) ("The Court finds that the specific harm suffered by Plaintiff Jacobo-Ramirez—revocation of bond and re-detention, after a constitutionally adequate bond hearing established that his continued detention was not warranted—is remedied by ordering his immediate release, subject to the bond conditions imposed by IJ Daugherty on September 3, 2025, and enjoining Defendants from preventing his release on the basis that he is detained under § 1225(b)(2).").

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be granted on Ground One; and
2. Respondent be directed to immediately release Petitioner, subject to the bond and other conditions imposed by the immigration judge in the July 14, 2025 order.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed

within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 12, 2025**           /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE